# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. KEVIN SWIFT
**Appeal from the Criminal Court for Shelby County**
**No. 05-07079      James M. Lammey, Jr., Judge**

---

### No. W2007-00673-CCA-R3-CD  - Filed September 4, 2008

---

In October 2005, the Shelby County Grand Jury indicted the defendant, Kevin Swift, on two counts of aggravated robbery, a Class B felony.  Following a jury trial in Shelby County Criminal Court, the defendant was convicted on both counts of the indictment; however, upon stipulation of the parties one of the defendant's convictions was reduced to the lesser included offense of aggravated assault, a Class C felony.  The trial court sentenced the defendant to eleven years as a Range I, standard offender on the aggravated robbery conviction and nine years as a Range II, multiple offender on the aggravated assault conviction.  The trial court ordered these sentences to be served consecutively.  The defendant appeals, asserting that: (1) the evidence produced at trial was insufficient to support his aggravated robbery conviction; (2) the sentences imposed for both sentences were excessive in that they were enhanced based on factors not found by the jury beyond a reasonable doubt; and (3) the trial court improperly imposed consecutive sentences.  After reviewing the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender; Garland Ergüden (on appeal) and William Robilio (at trial), Assistant District Public Defenders, for the appellant, Kevin Swift.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; Stacy M. McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, Todd Czyrnik testified that on May 27, 2004, he was employed as a supervisor in the home theater department at a Best Buy store in Memphis.  While at work that day, he was standing in the store's DVD section when he saw a man in the television section, approximately twenty-five feet from where he was standing, stealing some Sony PlayStation games.  Specifically,

Czyrnik saw the man, whom he identified as the defendant, "stick his hands with [the games] on top of the shelves" on which the television sets were placed. According to Czyrnik, the shelves were "a good 4 feet up in the air." Czyrnik then saw the man "stick his hands behind the TVs. . . . [O]nce he realized I was watching him, he took his hands very quickly and stuck them down in his pants." After Czyrnik observed this activity, he assisted another customer, but he continued to watch the defendant. After Czyrnik finished assisting the other customer, he went to the television section, where he saw two empty PlayStation game cases on a shelf. Czyrnik said that the games were valued at $19.99 each, and that the store did not recover the games following the incident.

After Czyrnik found the empty game cases, he went to the store's loss prevention desk, which was located at the front of the store, near the exit. Czyrnik told the loss prevention worker, Curtis Odom, that a man had stolen two PlayStation games. At that point, the defendant walked toward the desk. Czyrnik explained that the store's policy when dealing with a potential shoplifter was to approach the person without making a scene and ask the person to step into an office to fill out some paperwork. Czyrnik said that Odom attempted to speak to the defendant, but the defendant threw a punch at Odom, which missed. Odom and Czyrnik then attempted to grab the defendant, and the defendant again threw a punch, this time at Czyrnik. This punch also missed. Czyrnik said that the two employees cornered the defendant in the lobby outside the store's exit doors, but Czyrnik observed a knife in the defendant's hand, and the two employees backed off. Czyrnik said that he observed the defendant reaching at his pants when he initially approached the two employees at the loss prevention desk, so he presumed that the defendant was reaching for the knife at that point. He also said that seeing the defendant with a knife put him in fear of his safety.

Czyrnik testified that the police showed him a photograph array shortly after the incident, but he could not identify the defendant in the array because "a lot of them honestly in my opinion looked the same." However, he was able to positively identify the defendant as the perpetrator at the preliminary hearing in general sessions court, when eight or nine other men were also present in the courtroom. Czyrnik said that he was positive that the defendant was the perpetrator based on the defendant's "[d]emeanor, build, facial expressions, same facial expressions that he's giving now that he gave me earlier or when I saw him a couple of years ago."

On cross-examination, Czyrnik said that he did not see a knife in the defendant's hands when the defendant was in the television section. He also said that after the defendant left the store, he and Czyrnik followed the defendant into the parking lot in an attempt to find out where he was going or get a license plate number. Czyrnik said that the defendant did not attempt to take any other item from the store. On redirect, Czyrnik said that the defendant jumped into a gray Ford Taurus and backed out of the store's parking lot so that he and Odom were unable to obtain the car's license plate number.

Sergeant James Currin with the Memphis Police Department testified that he was the lead investigator in this case. As part of the investigation, he acquired the store's surveillance video from the day of the incident. He also prepared a photograph array, which he showed to Odom on September 2, 2004. Sergeant Currin said that Odom identified the defendant's photograph in the array, saying that the defendant was the person who had robbed the store.

Curtis Odom testified that he was the loss prevention specialist on duty at the Best Buy store on May 27, 2004. Odom said that part of his duties at the store involved working at a desk at the front of the store, near the exit, where he monitored the video feed from the store's surveillance cameras. Odom said that he could control each camera, allowing him to "zoom in or zoom out and put particular cameras in particular places where I need[ed] them to be." Odom said that when Czyrnik informed him about the defendant's activities, Odom placed a camera on the defendant. Odom said that initially, he could only see the defendant from the neck down, but he was later able to view the defendant when he moved to a different location.

Odom testified that after a while, the defendant approached the loss prevention desk as he was attempting to exit the store. Odom said that when presented with a potential shoplifting situation, he approached the person and said that he "just want[ed] to talk with them. If they have any merchandise that will be the place that they would either give it to me or I could take them into my office and they could give it to me then." Odom said that he spoke to the defendant, who then started to run toward the exit door. Odom said that he attempted to put his hands on the defendant, but the defendant "took an overhand swing" at Odom. Odom said that the defendant took another swing at him, at which point Odom noticed that the defendant had a knife in his hand. Odom then told Czyrnik to step back, which they did. Odom said that he was placed in fear when he saw the knife. After the two employees stepped back, the defendant ran into the parking lot and entered a brown or light gray Ford Taurus. Odom said that the Taurus backed completely through the parking lot, which Odom said was larger than a football field, and he was unable to observe the car's license plate.

Odom testified that he identified the defendant's photograph in an array the police showed him after the incident, and he also identified the defendant as the perpetrator at the preliminary hearing. The state also played the surveillance video taken from the store that day, with Odom describing the events as depicted on the video.

On cross-examination, Odom testified that he did not observe the defendant with any merchandise. He said that the store's policy was to contact the police after retrieving merchandise from a shoplifter. Odom said that when he approached the defendant as he was leaving the store, he asked the defendant if he could come to the office so that he (Odom) could speak to the defendant. Odom said that he did not identify himself as a Best Buy employee or indicate his position with the store. Odom also admitted that he did not tell the defendant why he was being asked to go to the office. On redirect, Odom said that both he and Czyrnik were wearing polo shirts embroidered with the Best Buy logo at the time of the incident. Odom also said he was wearing a name tag, which listed Odom's name and identified him as a loss prevention specialist.

The state's last witness was Pearl Davis, the defendant's girlfriend. She testified that on May 27, 2004, she owned a gray Ford Taurus. The defendant did not testify or present witnesses on his behalf.

At the conclusion of the trial, the defendant was convicted on two counts of aggravated robbery, as had been charged in the indictment. Upon agreement of the parties, and pursuant to this court's opinion in State v. Franklin, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003), the trial court

modified one of the aggravated robbery convictions to an aggravated assault conviction. Following a subsequent sentencing hearing, the defendant received an effective sentence of twenty years in the Department of Correction. This appeal followed.

## ANALYSIS

### I: Sufficiency of Evidence

The defendant argues that the evidence produced at trial was insufficient to support his conviction for aggravated robbery. Specifically, the defendant contends that pursuant to the Tennessee Supreme Court's holding in State v. Owens, 20 S.W.3d 634, 641 (Tenn. 2000), in order to sustain an aggravated robbery conviction, the state was required to establish beyond a reasonable doubt that the use of violence or placing another in fear occurred contemporaneously with the taking. The defendant asserts that because these two events did not occur contemporaneously, the defendant could not have been found guilty of aggravated robbery. We disagree.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The defendant was convicted of aggravated robbery. Aggravated robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1)-(2) (2003). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a) (2003). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. Our supreme court has held that to sustain a robbery conviction, "the use of violence (fear) must precede or be concomitant or contemporaneous with the taking to constitute robbery under Tenn. Code Ann. § 39-13-401" Owens, 20 S.W.3d at 637.

The defendant, basing his argument upon our supreme court's opinion in Owens, asserts that

-4-

his aggravated robbery conviction must be overturned because his placing the two store employees in fear was not contemporaneous with his taking of the computer games. However, the facts of this case can be distinguished from those of Owens. In Owens, the defendant grabbed an article of clothing and fled the store without paying for the merchandise. Id. at 637. Two store employees chased the defendant several blocks before the defendant dropped the merchandise and brandished a box cutter at the employees. Id. The defendant was later convicted of robbery, but the Tennessee Supreme Court reversed, concluding that "[t]his evidence [was] not sufficient to establish violence or fear preceding or contemporaneous with the taking of property. Indeed . . . the use of violence or fear was subsequent to the taking and temporally remote." Id. at 641.

The facts of this case are similar to one considered by this court in which we concluded that the defendant's use of violence was contemporaneous with his taking of property. In State v. Mario Merritt, No. W2003-02868-CCA-R3-CD, 2004 WL 2726030, at *1 (Tenn. Crim. App. Nov. 30, 2004), app. denied (Tenn. Feb. 28, 2005), the defendant and two other persons were observed taking several items of clothing from a Memphis department store. As the defendant walked past the store's cash registers and toward the store's exit, he was confronted by a loss prevention employee. Id. The defendant then pointed a gun at the employee and ordered him to get onto the ground. Id. The employee refused, and an altercation ensued. Id. A second employee arrived, and the defendant shot this employee before leaving the store. Id. This court affirmed the defendant's conviction, concluding that the facts of Owens were "clearly distinguishable from the [facts of Mario Merritt] in which the violence was contemporaneous with the taking of the clothing." Id. at *4. Similarly, the defendant's placing the Best Buy employees in fear was concomitant or contemporaneous to the taking of the store's merchandise, which occurred as he attempted to leave the store with the merchandise. Accordingly, we affirm the defendant's aggravated robbery conviction and deny him relief on this issue.

## II: Sentencing

The defendant next contends that the trial court imposed an excessive sentence. The basis of the defendant's assertion is twofold. The defendant argues that the trial court erred by enhancing his sentence based on an enhancement factor that was not found by the jury beyond a reasonable doubt, and he also argues that the trial court erred in imposing consecutive sentences. After reviewing the record, we affirm the length and manner of sentence imposed by the trial court.

### Length of Sentence/Enhancement Factors

At the defendant's sentencing hearing, the trial court found the following enhancement factors applicable to the defendant's convictions:

(2) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
(9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and
(21) The defendant was adjudicated to have committed a delinquent act or acts as a

juvenile that would constitute a felony if committed by an adult.

Tenn. Code Ann. § 40-35-114(2), (9), (21) (2003). Based on these enhancement factors and an absence of mitigating factors, the court sentenced the defendant to eleven years as a Range I, standard offender for his aggravated robbery conviction[1] and nine years as a Range II, multiple offender for his aggravated assault conviction.[2]

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003).[3] As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Under the law as it existed before the 2005 amendment, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class B, C, D, or E felony. Tenn. Code Ann. § 40-35-210(c) (2003). Tennessee's pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range based on the existence

---

[1]The sentence range for a defendant convicted of a Class B felony as a Range I offender is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003).

[2]The sentence range for a defendant convicted of a Class C felony as a Range II offender is six to ten years. Id. § (b)(3).

[3] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal because the defendant's offense occurred prior to the enactment of the revised sentencing act and the defendant elected to be sentenced pursuant to the sentencing act as it existed at the time of his offense.

of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). The weight to be afforded an existing factor was left to the trial court's discretion so long as it complied with the purposes and principles of the 1989 Sentencing Act and the court's findings were adequately supported by the record. Id. § 40-35-210 (2003), Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

While the court can weigh the enhancement factors as it chooses, the court may only apply the factors if they are "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2003). Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the Legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

On appeal, the defendant concedes that the trial court properly applied the enhancement factors identified in Tennessee Code Annotated section 40-35-114(2) and (21). However, the defendant argues that the trial court's application of enhancement factor (9), "unwillingness to comply with the conditions of a sentence involving release in the community," violated his Sixth Amendment rights. The defendant correctly notes that in 2007, our supreme court held that "to the extent the [former sentencing act] permitted enhancement based on judicially determined facts other than the fact of a prior conviction, it violated the Sixth Amendment as interpreted by the Supreme Court." State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007) ("Gomez II") (citations omitted). However, the Supreme Court has held that the defendant's Sixth Amendment right to a jury trial is not offended when the defendant's sentence is enhanced based on facts admitted by the defendant. See Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct. 2531, 2537 (2004) ("Our precedents make clear . . . that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.") (citation omitted; emphasis in original); Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 860 (2007). At the sentencing hearing, the defendant admitted to being arrested for and pleading guilty to theft while on bond for this offense, and the defendant also admitted to a prior probation revocation. Thus, while the trial court's application of enhancement factor (9) would normally violate the Sixth Amendment as interpreted by the United States and Tennessee Supreme Courts, the defendant's admitting to the facts upon which this enhancement factor was based rendered the trial court's application of the enhancement factor constitutionally permissible. We accordingly deny the defendant relief on this issue.

*Consecutive Sentencing*

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the trial court may cause multiple sentences to run consecutively if it finds by a preponderance of the evidence that the defendant "is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of his livelihood" or "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(1)-(2) (2003). The trial court is required to "specifically recite the reasons" behind imposition of a consecutive sentence. See Tenn. R. Crim. P. 32(c)(1); see, e.g., State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing).

In imposing consecutive sentences, the trial court found that both the "professional criminal" and "extensive criminal history" factors applied. Regarding the professional criminal factor, the record reflects that in addition to this offense, which resulted from the defendant's stealing two computer games, the defendant has six theft convictions, with one being felony theft between $1000 and $10,000 and the rest being misdemeanor theft of less than $500. This offense and five of the theft offenses occurred during periods when the defendant was not employed; the presentence report notes that the defendant claimed he was employed between January 2000 and December 2002 at American Seafood, but this employment was unverified. The defendant was also employed as a temporary laborer from September 18 through December 31, 2003, and again between March 10 and October 29, 2005. These periods of employment were verified. The trial court cited this limited employment activity in finding that the professional criminal factor applied.

On appeal, the defendant argues that the trial court erred in imposing consecutive sentences based on the professional criminal factor. However, we need not reach the merits of this issue, as the statutory consecutive sentencing factors are listed in the alternative, and therefore only one factor need exist to support the trial court's imposition of consecutive sentences. In this case, the trial court also found that consecutive sentences were appropriate based on the defendant's extensive criminal history. As the defendant notes in his brief, the presentence report reveals that the defendant has six previous felony convictions for offenses such as theft, evading arrest, vandalism, reckless endangerment, and possession of narcotics with intent to sell or manufacture. The defendant also has over twenty misdemeanor convictions, including ten driving offenses and five theft convictions. Given this record, which spans the entirety of the defendant's adult life, we conclude that the trial court properly imposed consecutive sentences in this case. The defendant is denied relief on this issue.

<u>CONCLUSION</u>

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-8-